**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---------------------------------
ANTHONY ABENANTE,                :
                                 :
         Plaintiff,              :   Civ. No. 03-6035 (DRD)
    v.                           :
                                 :
COMMISSIONER OF SOCIAL           :        **O P I N I O N**
SECURITY,                        :
                                 :
         Defendant.              :
---------------------------------

Agnes A. Wladyka, Esq.
Abromson & Carey
10 Park Place
Newark, New Jersey 07102
    Attorney for Plaintiff


Christopher J. Christie
United States Attorney
By:  Dennis J. Canning
     Special Assistant U.S. Attorney
C/O Social Security Administration
Office of the General Counsel
26 Federal Plaza, Room 3904
New York, New York 10278-0004
    Attorney for Defendant


**DEBEVOISE, Senior District Judge**

Plaintiff, Anthony Abenante ("Plaintiff"), appeals from a final determination of the Commissioner of Social Security ("Commissioner") denying his continued Disability Insurance Benefits ("DIB") under the Social Security Act ("the Act"). Plaintiff contends that the Administrative Law Judge's ("ALJ")

1

determination to terminate his DIB was not supported by substantial evidence showing that he has medically improved and has not been disabled since October 2000.  For the reasons set forth below, the Commissioner's determination is Reversed and Remanded.

I.      **FACTS AND PROCEDURAL HISTORY**

In April 1989, Plaintiff, then a 32 year old construction worker, went to his doctor with complaints of fatigue, feeling ill, and jaundice.  (R. at 148).  He was hospitalized at Clara Mass Medical Center for approximately two weeks and was diagnosed as having non-A, non-B, and non-C hepatitis.  (R. at 148). Plaintiff was released from the hospital and remained asymptomatic until December of that same year.  (R. at 148). Plaintiff was again hospitalized with similar symptoms for ten days in January 1990.  He applied for DIB on February 7, 1990 alleging disability as of December 18, 1989 due to chronic active hepatitis.  (R. at 43-45).  On April 3, 1990, Plaintiff was granted DIB backdated to December 18, 1989 due to his condition. (R. at 46).  Plaintiff has not worked since.

On September 20, 2000 an internal consultative examination was performed by Dr. Samuel Wilchfort of the New Jersey Department of Labor, Division of Disability Determination Services, as part of a periodic review of Plaintiff's disability

status.  (R. at 170).  The lab results from this examination revealed that Plaintiff had a total bilirubin level of .4, and a hematocrit level of 46.4.  (R. at 48).  Based on the results of this examination, a cessation notice was sent to plaintiff terminating his disability on October 19, 2000.  (R. at 47-48).

Plaintiff filed for reconsideration on October 25, 2000. (R. at 53).  On January 18, 2002 the Social Security Administration denied Plaintiff's request for reconsideration. (R. at 20-42).  Plaintiff requested a hearing before an Administrative Law Judge (ALJ) on January 24, 2002. (R. at 73). The hearing was conducted on October 24, 2002.  (R. at 20-42).

On March 18, 2003, the ALJ found that the Plaintiff's disability had ceased in October 2000, thereby terminating his DIB.  (R. at 12-19).  The Plaintiff requested review of the ALJ's decision on March 24, 2003 and that request was denied by the Appeals Council on December 1, 2003.  (R. at 4-12).  The Plaintiff then filed a complaint in this court on December 23, 2003.

**II.   EVIDENCE BEFORE THE ALJ**

Evidence before the ALJ consisted of the Plaintiff's testimony and medical records.

A. Plaintiff's Testimony:

3

At a hearing held on October 24, 2002, in Newark, New Jersey, Plaintiff testified before ALJ John Farley.  (R. at 20).

Plaintiff testified that at the time of the hearing he was a forty-six year old male with a GED who last worked as a construction laborer until he was diagnosed with hepatitis and was forced to leave work in 1989.  (R. at 26-28).  Plaintiff believes he contracted the disease from a needle stick injury he suffered at a construction site.  (R. at 29-30).  Plaintiff stated that he has since suffered from chronic fatigue, loss of thought, joint pain, and flu-like symptoms, and needed to nap every day for about three to four hours.  (R. at 31-32).  He testified that if he did not rest he would start shaking, become nervous, and feel sick.  (R. at 31).  Plaintiff testified that he could not stand for long periods, and does not frequently leave his house other than to go to the grocery store or to see his physician.  (R. at 33).  Plaintiff stated that he also suffered from gastritis and frequent upper respiratory tract infections, and has lost a lot of weight due to loss of appetite.  (R. at 32-38).  As a result of his condition, Plaintiff stated that he does not belong to any clubs or organizations, has no hobbies, and does not engage in any activities at all.  (R. at 36).  Plaintiff stated that he spends most days waking up, doing a little grocery shopping, returning home to read a newspaper or book, and taking a nap.  (R. at 36-37).  Plaintiff testified that he currently

takes Prilosec for gastritis, Levaquin for respiratory tract infections, and receives B12 injections once a week. (R. at 28, 39).

B. <u>Medical Records</u>:

The following medical records reflect doctors' treatment or examination of Plaintiff between April 1989 and September 2002:

(i.) <u>Clara Mass Medical Center</u>

On April 28, 1989 Plaintiff was admitted to Clara Mass for observation and therapy associated with a one week history of increasing pruritus (itching), anorexia, and fatigue. (R. at 127). He was treated by Dr. Manzi and evaluations revealed his liver to be borderline in size with some degree of dysfunction. (R. at 129). Plaintiff's Bilirubin level was 25.9. (R. at 136). Plaintiff was diagnosed as having non-A, non-B hepatitis.

(ii). <u>University Hospital - UMDNJ</u>

In December 1989, Plaintiff went to his private medical doctor with similar symptoms as those listed above. Labwork revealed that Plaintiff had elevated transaminase levels so his doctor referred him to Dr. Carroll Leevy for liver biopsy and treatment. (R. at 148). From January 9 through January 19, 1990 Plaintiff was admitted to University Hospital for screening. (R. at 148). After screening and liver biopsy, Dr. Leevy diagnosed Plaintiff as having chronic active hepatitis. Dr. Leevy

prescribed Alpha Interferon for treatment and continued to treat Plaintiff's condition until the time of the hearing.  (R. at 148-151).

In a report prepared in January 1999, Dr. Leevy stated that Plaintiff has been followed at the Sammy Davis, Jr. National Liver Institute since 1993 and has been treated with low doses of Alpha Interferon subcutaneously three times a week to prevent the progression of hepatitis.  (R. at 191).  Dr. Leevy stated that Plaintiff's symptoms and examination results fit the World Health Organization classification of viral hepatitis, agent unknown. (R. at 191).  Dr. Leevy further stated that Plaintiff is currently off all antiviral medications, with normal liver enzymes, but with severe fatigue and elevation of transaminase whenever he has bouts of pharyngitis or upper respiratory infections. (R. at 191).  Dr. Leevy classified Plaintiff's ultimate prognosis as "unknown."  (R. at 191).

On October 14, 1999 Dr. Leevy referred Plaintiff to have an ultrasound performed on his abdomen.  Dr. Leevy received a report from Dr. Singletary stating that Plaintiff's liver was not enlarged, that no liver masses were seen, and that Plaintiff had an essentially unremarkable abdominal ultrasound.  (R. at 169).

On June 5, 2001, Dr. Leevy reported that Plaintiff's condition had not changed and that Plaintiff's chief complaint was fatigue.  (R. at 186).

(iii).   Dr. Biagio J. DiStaso, M.D.

Dr. DiStaso has been Plaintiff's private physician since 1988.  He originally treated Plaintiff for hypertension and assisted Plaintiff with diet/ weight loss.  Dr. DiStaso referred Plaintiff to Dr. Leevy in December 1989 for treatment of his liver problem.  (R. at 165).  On May 4, 2001 Dr. DiStaso provided a General Medical Report to the Division of Disability Determination Services.  (R. at 184).  In his report, Dr. DiStaso noted that Plaintiff was treated with interferon and had a poor response.  (R. at 185).  Dr. DiStaso also noted that Plaintiff's Prognosis was "poor."  (R. at 185).

(iv).   Dr. Samuel Wilchfort, M.D.

On September 20, 1999 Dr. Wilchfort performed an examination of the Plaintiff for the New Jersey Department of Labor, Division of Disability Determination Services.  (R. at 170). Dr. Wilchfort confirmed Plaintiff's history and reported that Plaintiff had six liver biopsies between 1990 and 1999.  (R. at 171).  Dr. Wilchfort also reported that Plaintiff's chief complaint was fatigue.  (R. at 171).  The lab results from this examination revealed that Plaintiff had a total bilirubin level of .4, and a hematocrit level of 46.4.  (R. at 172-174).

7

### III. <u>ADMINISTRATIVE DECISION/ FINDINGS</u>

After reviewing the above-referenced evidence, the ALJ made the following findings in his written decision:

1. The plaintiff has not engaged in substantial gainful activity for the period in issue.

2. The plaintiff's hepatitis no longer meets the Listing criteria, specifically section 5.05 (f).

3. The plaintiff's hepatitis has medically improved from the CPD of 4/90 and is related to his ability to work.

4. The plaintiff has a severe combination of impairments, including hepatitis, non-A, non-B and non-C, and gastritis.

5. The plaintiff has the residual functioning capacity to perform the exertional and nonexertional requirements of work, except for the lifting of more than twenty pounds ("light work").

6. The claimant's allegations or subjective complaints were not found to be credible in light of the overall record (Social Security Ruling 96-7p and 20 CFR 404.1529).

7. The claimant is unable to perform his past relevant work as a construction laborer.

8. The claimant's age of forty six years old is in the "younger individual" category, he obtained his GED, and has essentially unskilled work experience.

9. 404.1569 of Regulations No. 4 and Rule 202.20, Table No. 2 of Appendix2, Subpart P, Regulations No. 4, direct a conclusion that, considering the claimant's residual functional capacity, age, education, and work experience, he is "not disabled."

10. The claimant is no longer under a "disability" as defined in the Social Security Act, affirming the previous reconsideration determination (DDS), ceasing the "disability" as of October 2000, with benefits terminating at the close of December 2000. (R. at 18.).

### IV. <u>DISCUSSION</u>

Plaintiff contends that the ALJ's decision is not supported by substantial evidence. Plaintiff asserts four reasons for this contention: (1) The ALJ failed to apply the "Medical Improvement" standard prior to concluding that there has been improvement in Plaintiff's medical condition. (2) The ALJ failed to articulate specific reasons for rejecting the opinions of Plaintiff's treating sources and for not giving credence to Plaintiff's nonexertional impairments. (3) The ALJ erred by mechanically applying the medical-vocational guidelines and by not obtaining expert testimony. (4) The ALJ erred by finding that Plaintiff can perform the full range of light work.

A.   Standard of Review

A recipient of disability benefits may have his/her benefits terminated on the basis of a finding that the physical or mental impairment on the basis of which such benefits are provided has ceased, does not exist, or is not disabling if: (1) such finding is supported by substantial evidence which demonstrates that there has been any medical improvement in the individual's impairment or combination of impairments (other than medical improvement which is not related to the individual's ability to work), and (2) the individual is now able to engage in substantial gainful activity. 42 U.S.C. § 423(f).

In order to determine whether or not medical improvement and

the ability to engage in substantial gainful activity has occurred the Administrative Law Judge must follow the specific steps outlined in 20 C.F.R. § 404.1594(f).  The ALJ must address the following questions with regard to the claimant's disability as outlined in § 404.1594(f):

> "(1) Are you engaging in substantial gainful activity? If you are (and any applicable trial work period has been completed), we will find disability to have ended (see paragraph (d)(5) of this section).
>
> (2) If you are not, do you have an impairment or combination of impairments which meets or equals the severity of an impairment listed in Appendix 1 of this subpart? If you do, your disability will be found to continue.
>
> (3) If you do not, has there been medical improvement as defined in paragraph (b)(1) of this section? If there has been medical improvement as shown by a decrease in medical severity, see step (4). If there has been no decrease in medical severity, there has been no medical improvement. (See step (5).)
>
> (4) If there has been medical improvement, we must determine whether it is related to your ability to do work in accordance with paragraphs (b)(1)-(4) of this section; i.e., whether or not there has been an increase in the residual functional capacity based on the impairment(s) that was present at the time of the most recent favorable medical determination. If medical improvement is not related to your ability to do work, see step (5). If medical improvement is related to your ability to do work, see step (6).
>
> (5) If we found at step (3) that there has been no medical improvement or if we found at step (4) that the medical improvement is not related to your ability to work, we consider whether any of the exceptions in paragraphs (d) and (e) of this section apply. If none of them apply, your disability will be found to continue. If one of the first group of exceptions to

medical improvement applies, see step (6). If an exception from the second group of exceptions to medical improvement applies, your disability will be found to have ended. The second group of exceptions to medical improvement may be considered at any point in this process.

(6) If medical improvement is shown to be related to your ability to do work or if one of the first group of exceptions to medical improvement applies, we will determine whether all your current impairments in combination are severe (see § 404.1521). This determination will consider all your current impairments and the impact of the combination of those impairments on your ability to function. If the residual functional capacity assessment in step (4) above shows significant limitation of your ability to do basic work activities, see step (7). When the evidence shows that all your current impairments in combination do not significantly limit your physical or mental abilities to do basic work activities, these impairments will not be considered severe in nature. If so, you will no longer be considered to be disabled.

(7) If your impairment(s) is severe, we will assess your current ability to do substantial gainful activity in accordance with § 404.1560. That is, we will assess your residual functional capacity based on all your current impairments and consider whether you can still do work you have done in the past. If you can do such work, disability will be found to have ended.

(8) If you are not able to do work you have done in the past, we will consider one final step. Given the residual functional capacity assessment and considering your age, education and past work experience, can you do other work? If you can, disability will be found to have ended. If you cannot, disability will be found to continue."

20 C.F.R. § 404.1594(f)

In Point I of his brief, Plaintiff contends that the ALJ failed to apply the medical improvement standard outlined above.

11

Plaintiff asserts that the ALJ "not only failed to make any findings whatsoever regarding how this record demonstrates an improvement in Plaintiff's signs, symptoms, and laboratory findings, but the ALJ failed to follow the eight-step sequential evaluation process outlined above, warranting remand of the case." (Pl.'s Br. at 14).  Plaintiff's argument essentially centers around the ALJ's alleged failure to adequately perform steps (3) and (4) of the above analysis by not citing sufficient evidence of Plaintiff's medical improvement (step 3) or the relation of improvement to Plaintiff's ability to work (step 4).

B. <u>Sufficiency of Evidence</u>

The factual findings of the Commissioner in determining disability shall be conclusive if supported by substantial evidence. 42 U.S.C. § 405(g) (1994). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind would accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). The Commissioner's decision must be upheld if, upon reviewing the record as a whole, a reasonable mind would find adequate support for the Commissioner's conclusion. <u>Rodriguez v. Secretary of Health and Human Services</u>, 647 F.2d 218, 222 (1st Cir.1981), citing <u>Consolidated Edison Co., v. NLRB</u>, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938).

Resolution of conflicts in evidence, including medical evidence, and the determination of disability is the Commissioner's task. <u>Richardson v. Perales</u>, 402 U.S. at 399, 91 S.Ct. 1420. However, if the Commissioner's decision is not supported by substantial evidence, this court has the power to affirm, modify, or reverse it. 42 U.S.C. § 405(g).

In the present case, Plaintiff was originally granted DIB in December 1989 because he met the requirements of § 5.05(f)(2) of the Listing of Impairments located in Appendix 1 to Subpart P of 20 C.F.R. § 404.  Plaintiff had chronic liver disease which was confirmed by liver biopsy and a bilirubin level equal to or greater than 2.5 mg per deciliter.  Plaintiff met the Listing requirements and was granted DIB.  However, during the Department of Labor's periodic review of Plaintiff's DIB in 1999, the analysis performed by Dr. Wilchfort revealed that Plaintiff's Bilirubin level was .4 mg per deciliter, well below the cutoff in the listing of impairments.  This prompted the Social Security Administration to discontinue Plaintiff's benefits.  The ALJ affirmed this decision because he believed that there was sufficient evidence showing that Plaintiff medically improved and that his medical improvement now enabled him to perform the full range of "light work."

Medical Improvement is defined as: "any decrease in the severity of your impairment (based on changes in the symptoms,

signs or laboratory findings associated with your impairments) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled." 20 C.F.R. § 404.1594(b)(1). Medical Improvement is not related to the ability to do work if there has been a decrease in the severity of the impairment but no increase in the functional capacity to do work. 20 C.F.R. § 404.1594(b)(2).

During the hearing which was conducted in October 2004, the ALJ reviewed the documentation provided by Plaintiff's various physicians, heard Plaintiff's testimony, and then decided that Plaintiff was no longer disabled. The ALJ's evaluation of the evidence states that "There has been medical improvement with respect to the claimant's ability to do work..." and cites the Plaintiff's lower bilirubin levels and "unremarkable abdomen" as a reason for this finding. (R. at 16). Additionally, the ALJ recites several of the Plaintiff's symptoms, and physician's reports, none of which examine the correlation between Plaintiff's illnesses and the ability to work. The ALJ acknowledges that Dr. DiStaso and Dr. Leevy, Plaintiff's treating physicians described Plaintiff's prognosis as "poor," and "unknown" (respectively), and that Dr. Leevy confirmed that Plaintiff was being treated for low grade chronic hepatitis; however, he nonetheless found that Plaintiff's improvements were related to his ability to do work.

In performing his analysis under Steps 3 and 4 of § 404.1594(f), the ALJ disregarded the statements of Dr. Leevy and Dr. DiStaso with regard to Plaintiff's chronic fatigue and pain despite the fact that these statements not only corroborate Plaintiff's testimony, but are undisputed by any evidence. Other than Plaintiff's testimony (which the ALJ did not find to be credible) there was no evidence presented at all regarding Plaintiff's ability to stand, walk, carry weight, use his hands and feet, or work for several hours at a time, yet the ALJ did not find Plaintiff's testimony to be credible. There was no expert testimony from medical or vocational personnel tying Plaintiff's symptoms to vocational ability. It appears as though once the ALJ realized that Plaintiff no longer fit the listing criteria of § 5.05(f)(2), the ALJ simply concluded that Plaintiff could perform light work without any evidence to support this Residual Functioning Capacity.

Once a claimant has introduced evidence that his condition remains essentially the same as it was at the earlier determination, the claimant is entitled to the benefit of a presumption that his or her condition remains disabling. <u>Kuzmin v. Schweiker</u>, 714 F.2d 1233, 1237 (3rd Cir. 1983). Once the burden to come forward has shifted to the commissioner, he must present evidence that there has been sufficient improvement in the claimant's condition to allow the claimant to undertake

gainful activity.  <u>Id</u>.  In a benefits termination case, the court must ascertain whether the Secretary's finding of improvement to the point of no disability is supported by substantial evidence. <u>See</u> <u>Hayes v. Secretary of Health, Education and Welfare</u>, 656 F.2d 204, 206  (6th Cir. 1981); <u>Miranda v. Secretary of Health, Education and Welfare</u>, 514 F.2d 996, 998 (1st Cir. 1975).

In the instant case, the ALJ failed to properly perform the 8 step analysis outlined in the C.F.R.  He cited sufficient evidence with regard to Plaintiff's "medical improvement," (step 3 in the analysis) but failed to cite any evidence showing the rationale for increasing Plaintiff's residual functioning capacity by reason of that improvement (step 4 in the analysis). Simply stating that you believe the lab findings, but do not believe the Plaintiff's or treating physician's testimony is not enough to withstand review.  The ALJ must specify why he found Plaintiff to be incredible and must cite some evidence which refutes the remarks made by the treating physicians, all of which agree that Plaintiff suffers from chronic fatigue, and soreness. Although the Plaintiff no longer meets the listing criteria of § 5.05, he still suffers from the same symptoms and it is possible that his Bilirubin levels might skyrocket if he weren't able to continue the sedentary lifestyle he has apparently been forced to lead.  There has been absolutely no evidence showing that Plaintiff's strength, endurance, or other qualities related to

16

his ability to work have improved. In fact, both of Plaintiff's primary physicians, Dr. DiStaso, and Dr. Leevy confirm Plaintiff's symptoms and state that his illness has remained the same. In these circumstances, the finding of an ability to perform light work for a sustained period of time is without evidential support and use of the "grid" was not warranted.

As such, the ALJ based his decision on insufficient evidence, and the commissioner did not adequately show that in spite of the fact that Plaintiff had "medically improved," he had an increase in functional ability. He failed to follow the requisite eight-step analysis.

## **CONCLUSION**

For the foregoing reasons, the final determination of the Commissioner is reversed and remanded, with instructions to review and analyze the record in accordance with the foregoing opinion. The ALJ and/or the Plaintiff may wish to supplement the record with a medical opinion as to whether the changes in Plaintiff's symptoms are likely to affect the level of fatigue and ability to work. An appropriate order will be entered.

```
                                    /s/ Dickinson R. Debevoise
                                    Dickinson R. Debevoise, U.S.S.D.J.
```

Dated:    September __19__, 2005